IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

NORFOLK DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | CRIMINAL NO. 2:13cr156 |
| v. ) | |
| ) | |
| W. WAYNE PERRY, JR., ) | |
| ) | |
| Defendant. ) | |

GOVERNMENT'S CONSOLIDATED RESPONSE TO DEFENDANT'S
RULE 29 AND RULE 33 MOTIONS

Now comes the United States, by its undersigned counsel, and for its consolidated response to the defendant's Rule 29 and Rule 33 motions, states that said motions should be denied. The motions are addressed seriatim as follows:

*Motion for a New Trial on Counts One, Two Through Five, and Ten Through Twelve*

Legal Standard

Rule 33(a) of Federal Rules of Criminal Procedure permits a district court to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). This rule gives a district court the authority to grant a new trial when the evidence weighs so heavily against a verdict or other errors committed at trial so prejudiced a defendant that a new trial is needed to prevent a miscarriage of justice. *See United States v. Arrington*, 757 F.2d 1484, 1486 (4th Cir. 1985); *United States v. Jones*, 542 F.2d 186, 211 (4th Cir. 1984) (new trial is appropriate "only when substantial prejudice has occurred"). This remedy, however, is to be exercised "sparingly" when addressed to challenges based upon the weight of the evidence, *United States v. Perry*, 335 F.3d 316, 320 (4th Cir. 2003) (internal quotations and citations omitted), and, with respect to other alleged errors, is reserved for situations where it is unjust to

1

allow a verdict to stand due to an error which adversely affected the substantial rights of a defendant. *United States v. Rasco*, 123 F.3d 222, 228 (5th Cir. 1997).

## Discussion

The defendant argues that the Government presented "false evidence" with respect to the effective date of the change in the requirement that the primary caregiver live in the same residence as the Medicaid recipient, and that somehow this violated the defendant's rights. The claim is meritless for the following reasons:

1. First, the defendant completely misinterprets the Government's theory of the case with respect to primary caregivers. As both parties and the Court agreed, the defendant was not charged with violating any Medicaid regulations, and the jury was so instructed. The effective date of the change in the residency requirement was utterly immaterial to the fraud perpetrated by the defendant with respect to primary caregivers and the submission of false claims for respite care services. Rather, it was the fact – clearly established by the evidence – *that the services were never provided*. Every witness, including the defendant himself, agreed that the purpose of respite care is to provide relief to the primary caregiver. The Government's evidence established that claims were filed where no such relief occurred.

For example, Michael Mullen, who lived in Maryland for decades, testified that he never told anyone at Community Personal Care that he was the primary caregiver for his mother, Elizabeth Mullen, who lived in Norfolk. He testified that he was not his mother's primary caregiver, that no one at Community Personal Care ever spoke with him about respite care, that he never requested respite care and didn't even know what it was. He further testified that he needed no relief for caring for his mother, which he did not do from Maryland. And yet the

defendant billed respite care services to Medicaid for "relief" to Mr. Mullen that was never actually provided.

Likewise, William Hatton, the son of Lucille Hatton, testified that he never told anyone that he was his mother's primary caregiver, that he was never his mother's primary caregiver, that no one at Community Personal Care ever spoke with him about respite care, that he never requested respite care and did not even know what it was. And yet the defendant billed respite care services to Medicaid for "relief" to Mr. Hatton that was never actually provided.

And Renee Faulkner, the aunt of shooting victim Casey McCook, testified that when Mr. McCook was released from rehabilitation in Richmond, he moved back to this area. Ms. Faulkner testified that she was not Mr. McCook's primary caregiver and never advised anyone at Community Personal Care otherwise, that she never requested respite care services, and that in fact she never had any contact whatsoever with Community Personal Care. And yet the defendant billed respite care services to Medicaid for "relief" to Ms. Faulkner that was never actually provided.

*In none of these and any other instances presented at trial was the effective date of the residency requirement material to the fraud shown by the evidence the Government presented.*

2. Moreover, contrary to the defendant's assertion, the Government did not present any false evidence whatsoever. While the Virginia Administrative Code may have been amended in 2007 to remove the requirement that a primary caregiver live in the same residence as the Medicaid recipient, the evidence presented by *both parties* was that the Virginia Medicaid *Manual* governing providers of home health care services did not make such a change until July 2011. **And in fact, it is absolutely accurate that the Medicaid <u>Manual</u> required that the**

*primary caregiver live in the same residence as the Medicaid recipient, until that requirement was eliminated in July 2011.*[1]

    3. Therefore, even if the residency requirement was eliminated in the Virginia Administrative Code by a 2007, the case was tried *by both parties* on the basis that this change was not made in the *Manual* until July 2011. And while the defendant cites the testimony of several Government witnesses that the *Manual* required the primary caregiver to live in the same residence as the Medicaid recipient until July 2011 – which, in fact, was accurate and truthful testimony – he fails to mention that his own witnesses said the same thing. For example, nurse Louis Wilson, called by the defense, testified in her videotaped deposition that was played at trial that the change in the residency requirement became effective in 2011. Deposition, p. 19. *What's more, the defendant himself testified that the Manual had a residency requirement until it was changed in July 2011*. There was never any dispute about this matter at any point during the trial. The Government was not aware, nor apparently was the defense, that the *Manual* had not been updated to reflect the 2007 amendment to the Administrative Code.

    4. The defendant's argument that the Government should have known of the "falsity" of the evidence that it presented is particularly disingenuous, since (1) the evidence presented by *both parties* during the trial was <u>not</u> false and (2) the defense had access to both the Virginia Administrative Code and the Medicaid *Manual*. In fact, it is apparent that defense counsel did review the Virginia Administrative Code in advance of trial, since a number of their proposed jury instructions cite the Code as supporting authority. Defendant's Proposed Jury Instruction Nos. 34, 35, 36, 37 and 38 all cite the Virginia Administrative Code as authority. Instruction

---

[1] The Government, both prior to trial and in preparing this response, verified that until July 2011, the Virginia Medicaid *Manual* did indeed require that the primary caregiver live in the same residence as the Medicaid recipient. The *Manual* was not updated until then to reflect the amendment made by the Virginia Administrative Code, which neither party relied on at any time during the trial.

4

Nos. 34 and 36-38 cite as authority the same section of the Code, 12 VAC 30-120-766, that the defendant now states, for the very first time, was amended in 2007 to remove the residency requirement. Thus, it is quite obvious that defense counsel were closely examining the very same Code section that they now cite in support of the proposition that the Government somehow engaged in misconduct by presenting "false evidence." Given that *defense counsel* had access to the Virginia Administrative Code and the amendment in question, they can hardly now complain that the Government presented what they incorrectly characterize as "false evidence." The Government certainly did not hide the amendment from defense counsel.

     5. In any event, the 2007 amendment in the Virginia Administrative Code is not "evidence." It is a regulation that was not solely in the custody of the Government. Therefore, the cases cited by the defendant in his motion are inapposite, because they deal with false testimony as to material *facts* or a *Brady* violation, and have absolutely nothing to do with a regulation. *United States v. Bartko*, 728 F.3d 327, 335-37 (4th Cir. 2013) (government had duty to correct witness's factually false testimony that it made no promises to him concerning how information he provided would not be used against him); *United States v. Kelly*, 35 F.3d 929, (government committed *Brady* violation where it failed to produce letter written by victim and affidavit for search warrant of victim's residence that contained material evidence as to victim's credibility). These and other cases cited by the defendant are wholly inapplicable here.

     6. And, because the Code was available to defense counsel prior to and during trial, they could have made the amendment a part of the case had they elected to do so.

     7. Furthermore, the defense itself concedes that any witness who testified that the effective date of the change in the residency requirement was 2011 instead of 2007 "may have been merely mistaken." ECF No. 170, p. 13 at fn.7. However, even this assertion is not

5

accurate, because no mistake was made. As noted, it is absolutely accurate, as testified to by witnesses for both parties, that the Medicaid *Manual* had a residency requirement for primary caregivers until it was deleted effective July 2011.

8. Accordingly, no "false" evidence was presented at trial, the defendant's due process rights were not violated, and most certainly this claim by the defendant provides no basis for a new trial.

*Motion for a New Trial With Respect to Counts Two Through Thirteen*

Legal Standard

The defendant now claims for the first time that the Court's jury instruction defining "willfully" was erroneous. No such objection was made during the lengthy charge conference where the parties were afforded ample opportunity to object to the Court's proposed instructions. Therefore, since the defendant failed to make a contemporaneous objection, the objection is deemed waived and only if the instruction given by the Court constituted "plain error" that affected the defendant's substantial rights will it now be noticed. Fed. R. Crim. P. 52(b). *United States v. Olano*, 507 U.S. 725, 731-32 (1993); *United States v. Cedelle*, 89 F.3d 181, 184-85 (4th Cir. 1996); *United States v. David*, 83 F.3d 638, 641 (4th Cir. 1996); *United v. Powers*, 59 F.3d 1460, 1468 (4th Cir. 1995).

Furthermore, jury instructions given must be examined in their entirety, rather than in piecemeal fashion, to determine whether they "accurately and fairly state[d] the controlling law." *See United States v. Rahman*, 83 F.3d 89, 92 (4th Cir. 1996); *United States v. Cobb*, 905 F.2d 784, 788-89 (4th Cir. 1990); *cf. United States v. Scott*, 424 F.3d 431, 434 (4th Cir. 2005) (in reviewing instructions as a whole, an appellate court will not vacate a conviction due to an

6

erroneous jury instruction, if the charge otherwise was not misleading and adequately stated the law).

## Discussion

The defendant's argument that he is entitled to a new trial because the Court erroneously instructed the jury on the definition of "willfully" should be rejected for the following reasons:

1. First, the Court properly instructed the jury on the definition of "willfully" by stating that "a person acts 'willfully,' as that term is used in these instructions, when that person acts deliberately, voluntarily and intentionally." It is irrelevant that the Court declined to use one of the instructions proposed by the parties, because its own instruction correctly defined "willfully." *See United States v. Hassouneh*, 199 F. 3d 175, 183 (4th Cir. 2000) (in prosecution under 18 U.S.C. § 35(b) for making a false statement about placing a bomb in an aircraft, upholding the district court's definition of "willfully" as "deliberately and intentionally, as contrasted with being made accidentally, carelessly or unintentional."). Notably, the Fourth Circuit in *Hassouneh* cited with approval its prior decision in *United States v. Daughtry*, 48 F.3d 829, 830-31 (4th Cir.), *vacated on other grounds*, 516 U.S. 984 (1995), which upheld a nearly identical instruction on "willfully" in the context of a false statement prosecution under 18 U.S.C. § 1001.

2. Moreover, in viewing the Court's charge as a whole, there is little doubt that the jury was properly instructed on the necessary *mens rea* of the defendant that it was required to find. The Court instructed the jury on the definition of the terms "knowingly," "intentionally," "fraud and fraudulent," "a scheme and artifice to defraud," "intent to defraud," and "false, fictitious or fraudulent statements or representations."

3. Specifically, with respect to health care fraud as charged in Counts 2-5, the Court instructed the jury that one of the essential elements of the offense was that the defendant acted

with "intent to defraud," and defined that term as acting "knowingly and with the intention or the purpose to deceive or to cheat," and that "[a]n intent to defraud is accompanied, ordinarily, by a desire or a purpose to bring about some gain or benefit to oneself or some other person or by a desire or a purpose to cause some loss to some person."

    4.  And with respect to false statements relating to health care matters as charged in Counts 6-13, the Court instructed the jury that one of the essential elements of the offense was that the defendant "made a materially false, fictitious and fraudulent statement and representation," and defined that term as "an assertion which is untrue when made or used and which is known by the person making it or using it to be untrue," and that it is "made or used with the intent to deceive."

    5.  Also, as requested by the defendant himself, the Court gave a lengthy instruction on "good faith," which the Court described as including "a belief or opinion honestly held, an absence of malice or ill will, and an intention to avoid taking unfair advantage of another." The Court instructed the jury that "good faith" was a complete defense to "the charges contained in the superseding indictment,"[2] and that the Government bore the burden "to prove to you, beyond a reasonable doubt, that the Defendant, W. Wayne Perry, Jr., acted knowingly and with *the intent to defraud Medicaid*." (Emphasis added). The Court also instructed the jury that "one who acts, or causes another to act, on a belief or opinion honestly held is not punishable . . . merely because the belief or opinion turns out to be inaccurate, incorrect, or wrong. An honest mistake in judgment or an error in management does not rise to the level of intent to defraud." And significantly, the jury was instructed that "[a] defendant does not act in 'good faith' if, even

---

[2] The Court will recall that the defendant's instruction on good faith, as initially proposed, covered only Counts 2-5 of the superseding indictment. However, at the charge conference the defendant requested that the instruction be amended to cover all the counts. The Government did not object to this amendment, which was granted by the Court.

8

though he or she honestly holds a certain opinion or belief, that defendant also knowingly makes false or fraudulent statements, representations, or promises to others." Finally, the Court expressly instructed that, "[i]f the evidence in the case leaves the jury with a reasonable doubt as to whether the Defendant acted knowingly with the intent to defraud Medicaid, or instead acted in good faith, the jury must acquit the Defendant."

6. Accordingly, when the Court's charge to the jury is viewed as a whole, it is apparent that the Court's instruction on "willfully" does not constitute plain error. In fact, there was no error at all since the Court's instruction was entirely proper. And in any event, the instructions given as a whole did not permit the jury to return a guilty verdict based upon facts showing that the defendant acted only carelessly or negligently. Nor did the instructions permit the jury to return a guilty verdict on any of the fraud or false statement counts in the superseding indictment in the absence of a finding that the defendant specifically intended to deceive and defraud Medicaid. Accordingly, no prejudice occurred and the defendant's substantial rights were not affected.

*Renewed Motion for Judgment of Acquittal or for New Trial on Counts 9-13 and 15-18*

Legal Standard

In reviewing a motion for judgment of acquittal, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). In making this determination, the United States is afforded the benefit of all reasonable inferences from the facts proven to those sought to be established, including the consideration of circumstantial as well as direct evidence. United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982). Moreover, the jury is

9

responsible for weighing the credibility of the evidence, resolving any apparent conflicts and, if the evidence supports different interpretations, deciding which one to believe. United States v. Murphy, 35 F.3d 143, 148 (4th Cir. 1994).

Discussion

The defendant, during trial, twice made a motion for a judgment of acquittal under Fed. R. Crim. P. 29. Both at the close of the Government's evidence, and again at the close of all of the evidence, the motion was made, extensively argued and denied by the Court. Substantial evidence supports the jury's verdict. The Government presented dozens of witnesses and well over one-hundred exhibits. As the Court stated when it twice denied the motion, the case was largely one based on the credibility of the witnesses, which is exclusively the province of the jury. In his renewed motion, the defendant offers nothing new, and the motion should be denied for the same reasons stated on the record by the Court.

Alternatively, the defendant requests a new trial "because the government completely failed to prove falsity" as to Count 9 with respect to personal care services, and because the defendant "did not have the requisite intent" and "had no knowledge of or involvement in his employees' criminal acts" as to Counts 10-13 and 15-18 with respect to respite care. As the Court is well aware, the Government presented substantial evidence to support the jury's verdict on all of these counts, and there is no need to recount that detailed evidence here, other than to make one point: The defendant wrongly asserts that the Government was required to show that the personal and respite care services were not "in fact" provided. The evidence clearly proved that despite his denial, the defendant billed only by the Plan of Care as to personal care services, and knowingly directed and caused the submission of fraudulent billing for respite care services. The co-defendant, Angela Perry, conceded on cross-examination that billing by the Plan of Care

10

constituted a fraud on Medicaid, *and the defendant himself, during cross-examination, testified that if the services were not documented on DMAS-90 timesheets, then they were not provided.* Furthermore, numerous witnesses testified that the defendant directed that personal care services be billed by the Plan or Care, and also directed the submission of false and fraudulent billing for respite care services. As the Court noted, it was exclusively for the jury to decide the credibility of witnesses. Accordingly, this motion should be denied.

        Dana J. Boente
        Acting United States Attorney

By:       /s/
    Alan M. Salsbury
    Melissa E. O'Boyle
    Assistant United States Attorneys
    101 West Main Street, Suite 8000
    Norfolk, Virginia 23510
    Tel. - 757-441-6331
    Fax - 757-441-6689
    Email - alan.salsbury@usdoj.gov

CERTIFICATE OF SERVICE

      I hereby certify that on the 10th day of October 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

John S. Davis, Esquire
Gray B. Broughton, Esquire
Brendan D. O'Toole, Esquire
Williams Mullen
200 South 10th Street
16th Floor
Richmond, Virginia 23219
jsdavis@williamsmullen.com
gbroughton@williamsmullen.com
botoole@williamsmullen.com

                                                     /s/
                                       Alan M. Salsbury
                                       Assistant United States Attorney
                                       Attorney for the United States
                                       United States Attorney's Office
                                       101 West Main Street, Suite 8000
                                       Norfolk, Virginia 23510
                                       Telephone Number - 757-441- 6331
                                       Facsimile Number - 757-441-6689
                                       E-mail Address - alan.salsbury@usdoj.gov